# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | | |
|---|---|---|
| **ERIN JARRETT** | : | |
| | : | |
| **Plaintiff,** | : | Civil Action No. 3:10cv60-S |
| | : | |
| v. | : | |
| | : | |
| **BAYER CORPORATION,** | : | |
| an Indiana corporation; | : | |
| | : | **COMPLAINT AND** |
| **BAYER HEALTHCARE** | : | **JURY DEMAND** |
| **PHARMACEUTICALS INC.,** | : | |
| a Delaware corporation; | : | |
| | : | |
| **BAYER HEALTHCARE, LLC,** | : | |
| a Delaware corporation; | : | |
| | : | |
| **BAYER SCHERING PHARMA AG,** | : | |
| a German Corporation; | : | |
| | : | |
| **BAYER AG,** | : | |
| a German Corporation; | : | |
| | : | |
| **Defendants.** | : | |

Plaintiff, Erin Jarrett, by and through counsel, and for her Complaint against Defendants, alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Erin Jarrett is a resident and citizen of Louisville, KY, located in Jefferson County, KY.

2. Plaintiff Erin Jarrett was prescribed and ingested the oral contraceptive Yaz in the State of Kentucky, and as a result of using Yaz suffered seizures throughout February, March, and April of 2009 in the State of Kentucky.

3. Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4. Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Kentucky by selling and distributing its products in Kentucky and engaged in substantial commerce and business activity in Jefferson County.

5. Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470. Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and a company formerly named Berlex Laboratories. Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Kentucky by selling and distributing its products in Kentucky and engaged in substantial commerce and business activity in Jefferson County.

6. Defendant Bayer Healthcare, LLC is a Delaware company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591. Defendant Bayer Corporation is Defendant Bayer Healthcare, LLC's only member, and Bayer Healthcare, LLC is, therefore, also a resident of Pennsylvania and Indiana. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories. Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Kentucky by selling and distributing its products in Kentucky and engaged in substantial commerce and business activity in Jefferson County.

7. Defendant Bayer Schering Pharma AG is a foreign company headquartered in Berlin, Germany. Bayer Schering Pharma AG is the corporate successor to Schering AG, which was acquired by Bayer AG in 2006. As a result of the acquisition, Schering AG was renamed Bayer Schering Pharma AG. At all times relevant, Defendant Bayer Schering Pharma AG, and/or its corporate predecessors, has been engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Schering Pharma AG conducted regular and sustained business in

Kentucky by selling and distributing its products in Kentucky and engaged in substantial commerce and business activity in Jefferson County.

8.     Defendant Bayer AG is a foreign company headquartered in Leverkusen, Germany and is the parent company and/or holding company for several Bayer entities known collectively as the Bayer Group, which includes the Bayer Defendants named herein.  At all relevant times, Defendant Bayer AG one or more of its groups or divisions has been engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz.  At all relevant times, Defendant Bayer Schering Pharma AG conducted regular and sustained business in Kentucky by selling and distributing its products in Kentucky and engaged in substantial commerce and business activity in Jefferson County.

9.     Berlex Laboratories, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey.  Berlex Laboratories, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc.  Prior to being integrated with Bayer Healthcare to create Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, supplying, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz.  At all relevant times, Berlex Laboratories, Inc. conducted regular and sustained business in Kentucky by selling and distributing its products in

Kentucky and engaged in substantial commerce and business activity in Jefferson County.

10. Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Bayer Schering Pharma AG, and Bayer AG are collectively referred to herein as "Bayer" or "Defendants."

11. This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in this district as Plaintiff Erin Jarrett was prescribed and used Yaz in this district, and because she resided in this district at the time of her injuries.

## FACTUAL BACKGROUND

### Nature of the Case

13. Plaintiff Erin Jarrett brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yaz (ethinyl estradiol and drospirenone), which is an oral contraceptive designed, manufactured, supplied, marketed, and distributed by the Defendants. Plaintiff Erin Jarrett suffered seizures throughout February, March, and April 2009 as a direct result of her use of Yaz.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

14. Yasmin and Yaz are birth control pills manufactured and marketed by Bayer. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component. Together, these steroidal

components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

15. Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

16. The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol. The progestin component is known as drospirenone. Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

17. Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

18. Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

19. During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

6

20. During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

21. Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

22. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

23. Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

24. One possible mechanism of action is that drospirenone interacts differently with ethinyl estradiol compared to other progestins, such that it does not sufficiently counterbalance the clotting effects of estrogen as do other progestins, particularly the second generation progestins.

25. Another possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

26. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia. If left untreated, hyperkalemia can be fatal.

27. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

28. Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

29. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

30. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

31. More recently, in May of 2009, two separate studies were published in the British Medical Journal concluding that there is an increased risk of venous thrombotic events associated with combined oral contraceptives containing drospirenone.

32. One paper published in the British Medical Journal on May 27, 2009 entitled, *Hormonal contraception and risk of venous thromboembolis: national follow-up study*, concluded that oral contraceptives containing drospirenone were associated with

8

a significantly higher risk of venous thrombosis than oral contraceptives containing levonorgestrel, a second generation progestin.

33. The other paper published in the British Medical Journal on May 29, 2009 entitled, *The venous thrombotic risk of oral contraceptives, effects of oestrogen dose and progestogen type: results of the MEGA case-control study*, concluded that there was a 6.3 fold increased risk of venous thrombotic events associated with oral contraceptives containing drospirenone.

34. In less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

35. These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

36. Some deaths reported occurred in women as young as 17 years old.

37. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

## Over-Promotion of Yasmin and Yaz

38. Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

39. However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

9

40. For example, prior to its integration with Defendant Bayer in 2006, Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

41. In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial. On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

42. The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

43. More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

44. Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

45. In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone … which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

46. The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

47. Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

48. Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

49. Most recently, on August 5, 2009, the FDA issued another warning letter to Defendant Bayer regarding the FDA's March 2009 inspection of Bayer's active pharmaceutical ingredient facility in Bergkamen, Germany. In its letter, the FDA warned that based on its inspection, Bayer's "quality management system fails to ensure that API's [active pharmaceutical ingredients] manufactured and released by [Bayer] meet established specifications." The active pharmaceutical ingredient drospirenone was specifically referred to by the FDA as one of the ingredients identified as manufactured and released out of specification.

50. Thus, not only is there evidence based on published scientific literature that Yasmin and Yaz inherently present an increased risk of venous thrombotic events when compared to other oral contraceptives, but there is also evidence of potential manufacturing irregularities associated with Yasmin and Yaz.

### Plaintiff's Use of Yaz and Her Resulting Injuries

51. As a result of Defendants' claim regarding the effectiveness and safety of Yaz, Plaintiff Erin Jarrett's medical provider prescribed and Erin Jarrett began using Yaz

in or about February of 2009. Plaintiff Erin Jarrett used Yaz until April of 2009. Throughout her use, Plaintiff suffered from seizures.

52. As a direct and proximate result of using Yaz, Plaintiff Erin Jarrett suffered the injuries described above.

53. Prior to Plaintiff's use of Yaz, Defendants knew or should have known that use of Yaz created a higher risk of seizures than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

54. Therefore, at the time Plaintiff used Yaz, Defendants knew or should have known that the use of Yaz created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, seizures, heart attacks, stroke, and even death.

55. Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz, Defendants failed to adequately warn Plaintiff Erin Jarrett and/or her health care providers of said serious risks before she used the products.

56. Had Plaintiff Erin Jarrett and/or her heath care providers known of the increased risks and dangers associated with Yaz, she would not have used the products and would not have suffered seizures in February, March, and April of 2009.

57. As a direct and proximate result of her use of Yaz, Plaintiff Erin Jarrett suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her seizures.

58. As a direct and proximate result of her use of Yaz, Plaintiff Erin Jarrett has suffered and will continue to suffer pecuniary losses.

## **FIRST CAUSE OF ACTION**

## **STRICT PRODUCT LIABILITY**

59. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

60. Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yaz.

61. The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their manufacture and construction when they left the hands of Defendants, were unreasonably dangerous, and posed a serious risk of injury and death, and failed to conform to product specifications.

62. The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in their design or formulation in that, when they left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with their design or formulation.

63. In the alternative, the Yaz birth control pills manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants were defective in design or formulation in that, when they left the hands of the Defendants, they were more dangerous than an ordinary consumer would expect.

64. The Yaz birth control pills manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants were defective due to inadequate warning or instruction, because Defendants knew or should have known

that the products created a significant risk of serious bodily harm and death to consumers including Plaintiff Erin Jarrett, and Defendants failed to adequately warn of such risks.

65. The Yaz birth control pills manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants were defective due to post-marketing warning or instruction, because after the Defendants knew or should have known of the increased risk of serious bodily harm and death from the use of the products, Defendants failed to provide an adequate warning of the product to consumers, including Erin Jarrett and her physician, knowing the product could cause serious injury and death.

66. As a direct and proximate result of Plaintiffs' use of Yaz as manufactured, designed, sold, supplied, and introduced into the stream of commerce by Defendants, Plaintiff has suffered serious physical injury, harm, damages, and economic loss as previously described, and will continue to suffer such harm, damages, and economic loss in the future.

67. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent or malicious, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### NEGLIGENCE

68. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

69. Defendants had a duty to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling,

marketing, promotions, and/or distribution of Yaz into the stream of commerce, including a duty to ensure that its product did not pose a significantly increased risk of bodily harm and adverse events.

70. Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz into interstate commerce in that Defendants knew, or should have known, that the product caused such significant increased risk of bodily harm or death and was not safe for use by consumers.

71. Defendants also failed to exercise ordinary care in the labeling of Yaz and failed to issue to consumers and/or their health care providers adequate warnings of the increased risk of serious bodily injury or death due to the use of Yaz.

72. Despite the fact that Defendants knew or should have known that Yaz posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz for use by consumers.

73. Defendants knew or should have known that consumers, such as Plaintiff Erin Jarrett, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

74. As a direct and proximate result of Defendants' negligence, Plaintiff Erin Jarrett suffered serious physical injury, harm, damages, economic loss and non-economic loss, and will continue to suffer such harm, damages, economic and non-economic loss in the future.

75. Defendants conduct as described above, including but not limited to their failure to adequately test Yaz, to provide adequate warnings, and their continued manufacture, sale, and marketing of the products when they knew or should have

known of the serious health risks the products created, constitutes oppressive, fraudulent, or malicious actions so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

76. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

77. At all times mentioned herein, Defendants expressly represented and warranted to Plaintiff and her health care providers, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the general public, that Yaz were safe and effective prescription birth control products that were fit an proper for their intended use.  In reliance upon said warranties, Yaz was prescribed to, purchased by, and used by Plaintiff Erin Jarrett.

78. The Yaz birth control product manufactured and sold by Defendants did not conform to these express representations, because it caused serious injury to consumers who used the product.

79. As a direct and proximate result of Defendants' breach of warranty, Plaintiff Erin Jarrett suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

80. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent or malicious, so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

81. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

82. At the time Defendants designed, manufactured, marketed, sold, and distributed the Yaz birth control products for use by Plaintiff Erin Jarrett, Defendants knew of the use for which the Yaz products were intended and impliedly warranted the Yaz products to be of merchantable quality, fitness, and safe for such use.

83. Plaintiff Erin Jarrett and her health care provider reasonably relied upon the skill and judgment of Defendants as to whether Yaz were of merchantable quality and safe for their intended use and upon Defendants' implied warranty as to such matters.

84. Contrary to the implied warranty, Defendants' products Yaz were not of merchantable quality or safe for their intended use because they were unreasonably dangerous as described herein.

85. As a direct and proximate result of Defendants' breach of warranty, Plaintiff Erin Jarrett suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

86. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent or malicious, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION AND FRAUD

87. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

88. Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz and, while engaged in the course of such business, made representations to Plaintiff and her physician regarding the character and/or quality of Yaz for guidance in their decision to select Yaz for Plaintiff's use.

89. Specifically, Defendants represented that their products were just as safe, and just as effective or more effective, than other birth control products on the market.

90. Defendants' representations regarding the character or quality of Yaz were untrue.

91. Defendants had knowledge based upon studies, published reports and clinical experience that their products Yaz created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

92. Defendants negligently and/or intentionally misrepresented or omitted this information in their product labeling, promotions and advertisements and instead labeled, promoted and advertised their products as safe and effective in order to avoid losses and sustain profits in their sales to consumers.

93. In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff and her physician.

94. Plaintiff Erin Jarrett and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in their labeling,

advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Erin Jarrett reasonably relied upon Defendants' representations to her and/or her health care providers that Yaz was just as safe and effective as other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

95. As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Erin Jarrett suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

96. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent or malicious, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. Compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2. Medical expenses and other economic damages in an amount to be determined at trial of this action;

3. Attorneys' fees, expenses, and costs of this action;

4. Such further relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  January 26, 2010                    Respectfully submitted,

>  */s/ Melanie S. Bailey*
>  Melanie S. Bailey (KY Bar No. 86679)
>  BURG SIMPSON ELDREDGE
>  HERSH & JARDINE, P.C.
>  312 Walnut Street, Suite 2090
>  Cincinnati, OH 45202
>  Phone: (513) 852-5600
>  Fax: (513) 852-5611
>  E-mail: mbailey@burgsimpson.com
>
>  **ATTORNEY FOR PLAINTIFF**

**OF COUNSEL:**

Janet G. Abaray
Calvin S. Tregre, Jr.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
Phone:  (513) 852-5600
Fax:  (513) 852-5611
E-mail:  jabaray@burgsimpson.com
E-mail:  ctregre@burgsimpson.com